The majority denies the State's application for rehearing without comment, apparently on the ground that the State has presented nothing new for the Court to review. I believe the State has shown in its brief why the case of North Carolina v.Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), is not applicable here. Because the majority fails to distinguish cases cited in the State's brief that indicate to me that we should grant rehearing in this case, I take this opportunity to extend the dissent which I filed on original deliverance. In my opinion, the Supreme Court of the United States has refused to broaden the scope of Pearce, especially in fact situations such as that presented here.
In Bordenkircher v. Hayes, 434 U.S. 357, 98 S.Ct. 663,54 L.Ed.2d 604 (1978), the defendant, with counsel, and the prosecutor, entered into plea negotiations whereby the prosecutor offered to recommend a five-year sentence if the defendant would plead guilty as charged to uttering a forged instrument. The prosecutor told the defendant that if he did not plead and save the court the inconvenience and necessity of a trial, he would return to the grand jury and seek an indictment under the habitual offender law, subjecting the defendant to a mandatory sentence of life imprisonment. The defendant rejected the offer, and the prosecutor obtained an indictment charging him under the habitual offender law. The defendant was subsequently tried and convicted and sentenced to life imprisonment. The defendant then challenged the prosecutor's actions, claiming it was an impairment of his constitutional rights to a trial. Id. at 359, 98 S.Ct. at 665. The Supreme Court found Pearce to be distinguishable. InPearce, the State unilaterally imposed a penalty upon a defendant who had chosen to exercise his right to appeal his original conviction. The Court found this was a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bargaining power." Id. at 362,98 S.Ct. at 667. The Court further stated:
 "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' . . . But in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. *Page 18 
 Plea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial."
Id. at 363, 98 S.Ct. at 668 (citations omitted).
The Court found the prosecutor's action to be constitutional, stating that a "rigid constitutional rule" prohibiting a prosecutor from acting forthrightly in his dealings with the defense "could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged." Id. at 365,98 S.Ct. at 669.
Although Bordenkircher dealt with prosecutorial vindictiveness rather than judicial vindictiveness, its reasoning is persuasive in the instant case. Here, as inBordenkircher, the petitioner was given the option of either accepting the plea bargain or insisting upon trial. Further, just as the defendant in Bordenkircher was aware of the consequences of rejecting the prosecutor's offer of a plea bargain, the petitioner in this case was aware of the consequences of setting aside the plea bargain. The supplemental transcript indicates that the petitioner was aware that the sodomy charge was nol-prossed only because of his guilty plea. Additionally, he was aware that the maximum sentence he could receive for burglary I was life imprisonment and that that was the maximum sentence for rape I as well. As is the custom where a court sentences an accused following a guilty plea, the court in this case displayed leniency in sentencing the petitioner to concurrent sentences of 30 years for burglary I and rape I. However, petitioner chose to forgo this leniency, and by appealing his conviction, withdrew his plea, thus tacitly repudiating his plea bargain agreement. SeeMoore v. Foti, 546 F.2d 67 (5th Cir. 1977). Thus, petitioner chose to subject himself to the possibility of receiving life sentences for rape I and burglary I if convicted and having reinstated the sodomy I charge with its maximum sentence of life imprisonment.
The Supreme Court of the United States further narrowed the scope of Pearce in United States v. Goodwin, 457 U.S. 368,102 S.Ct. 2485, 73 L.Ed.2d 74 (1982), and Ricketts v. Adamson,483 U.S. 1, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987). In Goodwin, the Court did not find prosecutorial vindictiveness where the prosecutor charged a misdemeanor defendant with a felony after he made a demand for a jury trial. In Ricketts, the defendant was allowed to plead guilty to second degree murder in exchange for his testimony against several co-defendants. Subsequently, the defendant repudiated the agreement by refusing to testify at the co-defendants' retrial. The prosecutor reinstated the original first degree murder charge against the defendant. The defendant was tried, convicted, and sentenced to death. The Supreme Court upheld the conviction finding that the defendant had chosen to face the possibility of the death penalty by repudiating the plea agreement. Id. 483 U.S. at 11,107 S.Ct. at 2686.
The Fifth Circuit Court of Appeals also has applied the analysis of Pearce and Bordenkircher to instances of alleged prosecutorial vindictiveness, and that court has also applied this reasoning to the analogous issue of judicial vindictiveness.
In Foti, supra, the defendant sought habeas corpus relief in federal court to stop the State from reinstating first degree murder charges against him. The defendant, a juvenile, was initially charged with first degree murder but pleaded guilty to murder in the second degree pursuant to a plea bargain. However, the defendant successfully challenged his conviction in the appellate courts, and upon remand the State reinstituted the first degree murder charge. In his federal habeas corpus petition, the defendant asserted that this action placed him in double jeopardy. The Fifth Circuit rejected this argument and stated that the defendant's successful challenge to his plea bargained sentence was a "tacit repudiation of the bargain, allowing the government to prosecute him on the greater charge." 546 F.2d at 68.
Although Foti dealt with double jeopardy issues, its reasoning is useful in the instant case. Like the defendant inFoti, the petitioner *Page 19 
in this case successfully challenged his plea bargained conviction and sentence because he was obviously unsatisfied with the sentence initially imposed. Foti held that in such an instance, the defendant's action is a "tacit repudiation" of the plea bargain agreement and he must face the consequences of his decision.
Like the defendant in Foti, the petitioner in this case repudiated the plea agreement. By this action, he not only permitted the State to reinstitute the sodomy I charge, but also permitted the trial court to enhance his sentence, because the sentence initially imposed was at least partly the result of leniency shown because he did not inconvenience the court and cause embarrassment to the victim when he chose to plead guilty to the charges rather than to stand trial.
In Frank v. Blackburn, 646 F.2d 873 (5th Cir. 1980), the analysis of Bordenkircher was applied to the issue of judicial vindictiveness. In Frank, the defendant attacked his sentence on the ground that the trial judge impermissibly increased his sentence because he rejected a plea bargain offer and elected to stand trial. The trial court offered a 20-year sentence if the defendant would plead guilty to the charge, but the defendant opted to stand trial. Upon conviction, he was sentenced to 33 years. The federal district court denied habeas corpus relief, but a three-judge panel of the Fifth Circuit reversed, finding that the defendant was penalized by the state court because he exercised his right to stand trial. The court later decided to rehear the case en banc "because of its potentially devastating impact upon the plea bargaining process." 646 F.2d at 875. A majority of the en banc court found that no constitutional rights were violated in the conviction and sentencing of the defendant.
In reaching its decision, the court noted the advantages of the plea bargaining process, which it found to expedite justice and to conserve judicial resources. 646 F.2d at 878. The court agreed with the defendant's assertion that a person cannot be punished simply for exercising his constitutional right to stand trial, but the court did not agree that the mere imposition of a longer sentence than defendant would have received had he pleaded guilty automatically constitutes such punishment. Id. at 883. A defendant is free to accept or reject the offer of the State. Once it is rejected, however, the defendant cannot complain that the denial of the benefits of the offer he rejected constitutes punishment or evidences judicial vindictiveness. "To accept such an argument is to ignore completely the underlying philosophy and purpose of the plea bargaining system. If a defendant can successfully demand the same leniency after standing trial that was offered to him prior to trial in exchange for a guilty plea, all the incentives to plea bargain disappear; the defendant has nothing to lose by going to trial." Id. at 883.